# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA

| | | |
|---|---|---|
| ANTHONY FISHER, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | CAUSE NO. 3:12-CV-241-TLS |
| | ) | |
| SUPERINTENDENT, | ) | |
| | ) | |
| Respondent. | ) | |

# OPINION AND ORDER

Anthony Fisher, a prisoner proceeding, filed this habeas corpus petition challenging a prison disciplinary proceeding. [ECF No. 1.] On October 14, 2011, a hearing officer at Indiana State Prison (ISP) found Fisher guilty of possessing a dangerous weapon under cause number ISP 11-09-0439. [ECF No. 9-7 at 1.] The charges were initiated on September 28, 2011, when Officer Aaron Osorio wrote a conduct report stating as follows:

> On 09/28/11 approx. 9:40 am Officer Hinchen and I Officer Osorio were packing up the cube of offender Fisher DOC #915292 in E-Dorm East-44 and found a pipe inside of an empty Mountain Dew pop case which was pushed up against the cube's wall on the floor next to the garbage can.

[ECF No. 9-1 at 1.] A witness statement was also obtained from Officer Jasmine Hinchen, who stated as follows:

> I Officer Hinchen was helping Officer Osorio pack cube E44 in Edorm. The cube belonged to offender Fisher 915292. Officer Osorio was looking in a Mountain Dew pop box that was standing up next to the wall. In the Mountain Dew box he found a large metal item. Officer Osorio turned the large metal object in to the O.I.C.

[ECF No. 9-1 at 4.] Photos of the pipe, which was determined to be 10–12 inches long, were taken, and were sent to Fisher through the prison mail. [ECF No. 9-2; ECF No. 9-1 at 2-3.]

The screening report reflects that Fisher was screened on October 5, 2011, pled not guilty, requested a lay advocate, and requested the "same evidence requested on case #ISP 11-09-0438." [ECF No. 9-2 at 1.] That case involved an unrelated charge that Fisher had assaulted another inmate with a brick earlier the same day that the pipe was found in his cell.[1] [*See* ECF No. 9-15; ECF No. 9-16.] On October 7, 2011, Fisher sent correspondence to the screening officer which he stated pertained to "ISP 11-09-0438 and ISP 11-09-0439." [ECF No. 9-8 at 1.] He asked for various officers to be present at his hearing; for a review of camera evidence; for information regarding "weapons charges and violent offenses" committed by "gang members and affiliates living in E-dorm on 9/27/11 and 9/28/11"; for fingerprint analyses, lie detector tests, and DNA testing "of all bodily fluids pursuant to alleged offenses"; for "chain-of-command" reports showing "how the evidence traveled"; for various executive directives and "All Constitutional Amendments and the U.S. Laws enacted as Prisoner Right(s)." [ECF No. 9-8 at 1-2.] He also submitted a detailed list of questions he wanted to ask the officers, including whether Officer Hinchen had "dusted for prints" on the Mountain Dew box and whether the box looked "staged" when they discovered it. [*Id.* at 6-7.] Prior to the hearing, the hearing officer reviewed surveillance video of the search of Fisher's cell, and summarized the video as follows: "When viewing the camera I see officers shaking down a cube on the eastside of E-Dorm from

---

[1] The events giving rise to the other charge occurred around 3:55 a.m. on September 28, 2011, when Fisher was discovered fighting with another inmate near cube E-E-30. They were ordered to stop, at which point Fisher fled; he was later found hiding in cube E-E-50. [ECF No. 9-15; ECF No. 9-16.] The other inmate suffered a "large gash" to his forehead, and a brick and large amounts of blood were found in cube E-E-30. [ECF No. 9-16.] Fisher was found guilty of assault with a weapon, and is challenging that guilty finding in a separate habeas petition. *See Fisher v. Superintendent*, No. 3:12-CV-183-JD (N.D. Ind. filed Apr. 18, 2012.)

9:10 a.m. to 10:00 a.m. Because of the distance of the camera I am unable to see any more detail." [ECF No. 9-5.]

On October 14, 2011, the hearing officer conducted a hearing on the charge. [ECF No. 9-7.] Fisher was represented by a lay advocate pursuant to his request. [*Id.*; ECF No. 9-4.] His defense was that he had been out of his cell for several hours prior to the search and that "[a]nyone could have put that weapon in my cube[.]" [ECF No. 9-7 at 1.] The hearing officer found him guilty based on staff reports, Officer Hinchen's statement, the photos, and other evidence. [*Id.*] She noted that Fisher had requested a continuance to obtain other evidence and witnesses, and she explained the reasons why she was denying each of his requests. [*Id.* at 2-3.] His request for fingerprints, lie detector tests, and DNA testing were denied because no such evidence was available. [*Id.* at 2.] His request for medical records was denied because none were available that were relevant to that disciplinary charge. [*Id.*] None of the officers he requested as witnesses were working that day, although Officer Hinchen's statement was considered. [*Id.* at 3.] He requested that the hearing be videotaped, but no equipment was available to tape the hearing. [*Id.* at 2.] As a result of the guilty finding, Fisher lost earned-time credits and was sentenced to 60 days in segregation. [Doc. No. 9-7 at 1.] He appealed to the facility head and to the final reviewing authority, but his appeals were denied. [ECF Nos. 9-9 to 9-12.] Thereafter, he filed this federal petition. [ECF No. 1.]

When a due process liberty interest is at stake in prison disciplinary hearings, the Fourteenth Amendment guarantees prisoners certain procedural due process protections: (1) advance written notice of the charges; (2) an opportunity to be heard before an impartial decision maker; (3) an opportunity to call witnesses and present documentary evidence in defense when

3

consistent with institutional safety and correctional goals; and (4) a written statement by the fact-finder of evidence relied on and the reasons for the disciplinary action. *Wolff v. McDonnell*, 418 U.S. 539 (1974). To satisfy due process, there must also be "some evidence" to support the disciplinary decision. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455 (1985).

Fisher first argues that he was denied advance written notice of the charges because he was not properly screened. [ECF No. 1 at 5.] The respondent has submitted an affidavit from the screening officer, Victoria Taylor, who attests that she met with Fisher and screened him on the date reflected in the screening order, but that he could not sign the form because he was in the disciplinary segregation unit behind a plate of plexiglass. [ECF No. 10.] Fisher, by contrast, attests that Taylor never came to meet with him and that he instead received the conduct report and other documents through the prison mail. [ECF No. 13.] This dispute is irrelevant and need not be resolved.

The Due Process Clause does not entitle Fisher to a proper "screening"; it entitles him to advance written notice of the charges sufficient to "enable him to marshal the facts and prepare a defense." *Wolff*, 418 U.S. at 564. To satisfy due process, the notice must be given at least twenty-four hours in advance, must alert the inmate to the rule that he allegedly violated, and must summarize the facts underlying the charge. *Northern v. Hanks*, 326 F.3d 909 (7th Cir. 2003) (per curiam); *Whitford v. Boglino*, 63 F.3d 527, 534 (7th Cir. 1995). That standard is satisfied here. Fisher acknowledges in his traverse that he received the conduct report and other documents through the mail prior to the hearing. [ECF No. 17-1 at 3.] It is also clear from correspondence he sent to the hearing officer on October 7, 2011, that he was fully aware of the facts underlying the charge, and was able to request evidence he believed would support his

4

defense. [ECF No. 9-8 at 1-6.] The notice satisfied federal due process. To the extent Fisher is claiming that the screening officer violated IDOC policy, relief is not available in this federal habeas corpus proceeding, which only applies to violations of the U.S. Constitution or other federal laws. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Hester v. McBride*, 966 F. Supp. 765, 775 (N.D. Ind. 1997). Accordingly, this claim is denied.

Fisher also claims that he was denied the right to present evidence and witnesses in his defense. [ECF No. 1 at 3, 6.] A prisoner has a limited right to call witnesses and present documentary evidence in his defense consistent with correctional goals and safety. *Wolff*, 418 U.S. at 566. A hearing officer may deny witness or evidence requests that threaten institutional goals or are irrelevant, repetitive, or unnecessary. *Piggie v. Cotton*, 342 F.3d 660, 666 (7th Cir. 2003). The denial of the right to present evidence will be considered harmless unless the prisoner can show that the evidence would have aided his defense. *Id*.

As an initial matter, it must be noted that Fisher created unnecessary confusion for the hearing officer (and, indeed, for this Court) by lumping together his requests for evidence in this case with evidence sought in connection with the other disciplinary charge pending against him. [*See* ECF No. 9-8.] The hearing officer made efforts to sort out which evidence might be relevant to this case, but the bulk of the evidence he sought pertained to the other disciplinary charge, which occurred at a different time, in a different area of the prison, and involved different individuals and different facts. [*See* ECF No. 9-15.] For instance, he sought "medical records," but the hearing officer concluded that there were no such documents relevant to this case. [ECF No. 9-7 at 2.] Fisher has not explained how this was erroneous, nor has he identified what medical records would be exculpatory—or even relevant—to a charge that he possessed a

5

metal pipe in his cell. In a similar vein, Fisher's request for lie detector tests, DNA testing, and fingerprint analyses were properly denied (to the extent they even pertained to this disciplinary charge), because an inmate is not entitled to the creation of favorable evidence in a disciplinary proceeding. *See Outlaw v. Wilson*, No. 3:07cv54, 2007 WL 1295815, at *2 (N.D. Ind. Apr. 30, 2007) (inmate had no right to require creation of favorable evidence in the form of handwriting analysis or lie detector test results); *see also Freitas v. Auger*, 837 F.2d 806, 812 n.13 (8th Cir. 1988) (prisoners are not entitled to polygraph tests in disciplinary hearings).

Fisher also sought "video camera footage for time in questioning [sic]," but because his request was made in the context of two unrelated disciplinary charges, it would not have been clear to which "time" he was referring. [ECF No. 9-8 at 2.] The hearing officer watched the video from the time of the search, but due to distance and location of the camera it was neither inculpatory nor exculpatory. [ECF No. 9-5.] Fisher apparently wanted her to review the video from earlier that day to see how many "gang members and affiliates" in his dorm "walked by or loitered near E-E-44 cube." [ECF No. 9-8 at 1.] It is not clear that he made a timely and explicit request for this video to be reviewed prior to the hearing. Even if he did, there is no indication (nor does he argue) that the video could have captured someone planting the pipe in his cell given the distance and location of the camera; video showing someone walking by or "loitering" near his cell would not be the type of "patently exculpatory" evidence that must be considered under the Due Process Clause. *Rasheed-Bey v. Duckworth*, 969 F.2d 357, 361 (7th Cir. 1992); *see also Meeks v. McBride*, 81 F.3d 717, 721 (7th Cir. 1996) ("exculpatory evidence" in this context means evidence that "directly undermines the reliability of the evidence in the record pointing to [the prisoner's] guilt").

Fisher also identified five correctional officers as witnesses, but it is apparent that he wanted to question four of them about the fight with the other inmate, which was wholly irrelevant to this charge. [*See* ECF No. 9-8 at 1-9. ] As for Officer Hinchen, she was not available at the time of the hearing, but she did give a statement which was considered by the hearing officer. [*See* ECF No. 9-1 at 4; ECF No. 9-7 at 1.] Her statement was not exculpatory, and instead she corroborated Officer Osorio's account of how the metal pipe was found among Fisher's belongings. [ECF No. 9-1 at 4.] Although it appears Fisher wanted to cross-examine Officer Hinchen about the discovery of the pipe, "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff*, 418 U.S. at 556. The formal rules of evidence also do not apply, nor is there any right to confront or cross-examine adverse witnesses. *Id.*; *Piggie*, 342 F.3d at 666. Fisher was free to offer his own explanation of how the pipe might have gotten in his cell, which he did, and which the hearing officer considered in reaching her decision. [*See* ECF No. 9-7 at 1.] Fisher has not established a violation of his due process rights.

Fisher also sought production of confidential information regarding "Security Threat Groups," specifically, a list of gang members in his cell block, their cell numbers, and information about offenses they committed while in prison. [ECF No. 9-8 at 1.] This request was reasonably denied for security reasons. [ECF No. 9-7 at 2.] A list of gang members deemed to be a threat to prison security, along with information about their exact location and offenses they committed while in prison (in some cases, no doubt, against other inmates) is highly sensitive and dangerous information. Among other things, such information could be used to target rival gang members or uncover gaps in prison security. *See Jones v. Cross*, 637 F.3d 841, 848 (7th

Cir. 2011) (prison officials were not required to disclose evidence that would "entail a security risk"); *Piggie v. Cotton*, 344 F.3d 674, 678-79 (7th Cir. 2003) (prisons are permitted to deny requests for evidence that threatens institutional goals or safety).

Furthermore, Fisher has not explained how this information would have been exculpatory to the charge that he possessed a metal pipe in his cell. *Rasheed-Bey*, 969 F.2d at 361 (conditional right to access documentary evidence extends only to evidence that is exculpatory in nature). Instead, it appears he hoped to use the information to find someone on his cell block who may have had held a grudge against him. Even if he were armed with such information, it would not directly undermine the fact that the pipe was found in his cell among his belongings. *Meeks*, 81 F.3d at 721; *Rasheed-Bey*, 969 F.2d at 361. The hearing officer was not required to prove Fisher's guilt beyond a reasonable doubt or to credit his claim that someone planted the pipe in his cell. *See Hill*, 472 U.S. at 457; *see also Hamilton v. O'Leary*, 976 F.2d 341, 345 (7th Cir. 1992) (constructive possession of contraband provided some evidence of guilt). Based on the record, Fisher has not established a violation of his federal due process rights. To the extent he is claiming that he was denied evidence or witnesses in violation of IDOC policy, this would not provide a basis for granting federal habeas relief. *Estelle*, 502 U.S. at 67-68. Accordingly, this claim is denied.

Fisher also claims that there was insufficient evidence to support the hearing officer's guilty finding. [ECF No. 1 at 7-8.] In determining the sufficiency of the evidence, "courts are not required to conduct an examination of the entire record, independently assess witness credibility, or weigh the evidence, but only determine whether the prison disciplinary board's decision to revoke good time credits has some factual basis." *McPherson v. McBride*, 188 F.3d 784, 786

8

(7th Cir. 1999). "[T]he relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455-56. The court will overturn a guilty finding based on insufficient evidence only if "no reasonable adjudicator could have found [the prisoner] guilty of the offense on the basis of the evidence presented." *Henderson v. United States Parole Comm'n*, 13 F.3d 1073, 1077 (7th Cir. 1994).

In this case, there is more than sufficient evidence to support the hearing officer's determination, including the conduct report filed by Officer Osorio, the witness statement from Officer Hinchen, and the photos of the pipe. *See Moffat v. Broyles*, 288 F.3d 978, 981 (7th Cir. 2002) (witness statements constituted some evidence); *McPherson*, 188 F.3d at 786 (7th Cir. 1999) (conduct report provided some evidence to support disciplinary determination). To the extent Fisher is claiming he should not have been found guilty because there was no direct evidence of his guilt, this argument is unavailing, since circumstantial evidence is sufficient. *Hamilton*, 976 F.2d at 345. Although Fisher denies that the weapon belonged to him, it is not the province of this Court to reweigh the evidence or make its own determination of the facts. *McPherson*, 188 F.3d at 786. The question is simply whether there is some evidence to support the hearing officer's determination, and that standard is satisfied. Accordingly, this claim is denied.

Fisher also claims that the hearing officer's written statement was inadequate. [ECF No. 1 at 7.] The written statement requirement is "not onerous," and to satisfy due process "[t]he statement need only illuminate the evidentiary basis and reasoning behind the decision." *Scruggs v. Jordan*, 485 F.3d 934, 941 (7th Cir. 2007). Here, the hearing officer stated that in reaching her decision she considered staff reports, Fisher's statement, witness statements, the evidence card,

9

and photos of the pipe. [ECF No. 9-7 at 1.] She stated that she was finding him guilty because "the weapon was found in the offender's cube." [*Id.*] Although this statement was not lengthy, it adequately identified the evidence relied on and her reasoning, specifically, that there was sufficient evidence of possession because the pipe was found in Fisher's cell. The written statement the hearing officer provided satisfied due process, and therefore this claim is denied.

Fisher also argues that he was denied an impartial decision-maker because the hearing officer did not adequately consider the "material facts" of his case. [ECF No. 1 at 5.] In essence, Fisher believes the evidence against him was insufficient and that the hearing officer should have credited his statements that the pipe did not belong to him. [*Id.* at 5-6.] Such an argument is at bottom a reformulation of the sufficiency of the evidence claim, which is unavailing for the reasons stated above. Furthermore, in the prison disciplinary context, adjudicators are "entitled to a presumption of honesty and integrity," and the constitutional standard for improper bias is high. *Piggie*, 342 F.3d at 666. Due process is violated if a prison official who is substantially involved in the underlying incident also acts as a decision-maker. *Id.*; *Whitford*, 63 F.3d at 534. Fisher does not allege that this occurred here, nor is there any indication from the record that the hearing officer was involved in the underlying incident leading to the disciplinary charge. Accordingly, this claim is denied.

Fisher also argues that he was denied adequate representation from his lay advocate. [ECF No. 1 at 3.] Due process requires the assistance of a lay advocate only when the inmate is illiterate or when "the complexity of the issue makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case." *Wolff*, 418 U.S. at 570. Fisher's filings demonstrate that he is literate (a point he acknowledges in his

traverse [ECF No. 17-1 at 2]), and fully capable of making cogent arguments in his own defense. There was also nothing particularly complex about the charge and instead, the sole issue was whether Fisher possessed a metal pipe in his cell. The Seventh Circuit found the assistance of a lay advocate unnecessary in a case presenting more complex issues than simple possession of a weapon. *See Miller v. Duckworth*, 963 F.2d 1002, 1004 (7th Cir. 1992) (charge of escape not unduly complex). Under these circumstances, Fisher has not established a due process violation. Whether his lay advocate did his job in accordance with IDOC standards is not relevant to a claim for federal habeas relief. *Estelle*, 502 U.S. at 67-68. Accordingly, this claim is denied.

For these reasons, the Petition [ECF No. 1] is **DENIED**.

SO ORDERED on January 17, 2013.

s/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT
FORT WAYNE DIVISION